UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY B. PORTER                                                                                    PLAINTIFF

V.                                                                         CIVIL ACTION NO. 3:14CV842-DPJ-FKB

RANKIN COUNTY SCHOOL DISTRICT                                                   DEFENDANT

ORDER

This age-discrimination suit is before the Court on Defendant Rankin County School District's (RCSD) Motion for Summary Judgment [26]. Plaintiff Mary B. Porter has responded in opposition. The Court, having considered the parties' submissions and relevant authorities, finds that Defendant's motion [26] should be granted due to Plaintiff's lack of a prima facie case or an adequate pretext showing.

I.       Facts and Procedural History

Plaintiff Mary B. Porter is an English teacher who, in January 2014, showed the R-rated film "Dolan's Cadillac" to two separate tenth-grade English classes. The film contained profanity and racial slurs and depicted violence and sex trafficking. Porter Dep. [26-2] at 11–12. Before showing the film, Porter did not view it, check the rating, include the film in her lesson plans, or otherwise obtain permission from the school administration. *Id.* at 8–9. When she realized mid-film that it was inappropriate to show the class, she hesitated but nevertheless allowed the students to continue watching. *Id.* at 12. After showing the film to the first class, she discussed her concerns with two other teachers, advising one, "You cannot watch the movie. It's got too much profanity in it." *Id.* at 13. Still, Porter showed the film to a second tenth grade class the following day, warning them, "There is a lot of profanity in it. I hope this doesn't offend you." *Id.*

After a parent lodged a complaint about the film, school officials met with Porter, and she admitted that showing the film (twice) was a mistake. *Id.* at 14–15. RCSD placed Porter on indefinite administrative leave with pay pending further investigation. Letter [26-13]. That same day, Porter sent the following message to Principal Sutton through Facebook: "Mr. Sutton, If it would help anything at all toward a resolution, I want you to know that if I could make it til [sic] the end of the year, I will retire. I don't want to, but I would if need be. Thanks!" Message [26-8]. The next day, Porter tendered her notice of resignation to the Rankin County Board of Education citing "husband's health; retirement." Resignation [26-5] (dated January 31, 2014). She also initiated an application for retirement benefits through the Public Employees' Retirement System. Application [26-6].

On February 14, 2014, Porter filed a charge of age discrimination with the Equal Employment Opportunity Commission. Charge [26-7]. She claimed then that RCSD gave her an "ultimatum to resign or be discharged" and concluded that she was "constructively discharged by being forced to resign." *Id.* She also contended that younger coworkers who violated the state code of ethics were not immediately terminated. *Id.*

After receiving notice of her right to sue, Porter filed this action against RCSD alleging a violation of the Age Discrimination in Employment Act (ADEA). Compl. [1].[1] Following discovery, RCSD moved for summary judgment. The motion is fully briefed, and the Court is prepared to rule.

---

[1] Porter also alleged a breach-of-contract claim, which she conceded in her Response to Defendant's Motion for Summary Judgment.

II.	Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.	Analysis

Porter has elected to prove her claim of age discrimination through circumstantial evidence, using the test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). She must first establish a prima facie case of age discrimination, by showing: (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class when she was discharged; and (4) she was either (I) replaced by someone outside of the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged due to her age. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Next, the burden shifts to RCSD to offer a non-discriminatory, legitimate reason for the employment action. *Moss v. BMC Software*, 610 F.3d 917, 922 (5th Cir. 2010). Finally, Porter must show that the reason offered by the defendant is not its true reason, but is a pretext for discrimination. *Moss*, 610 F.3d at 922. To prevail on her age-discrimination claim, Porter must ultimately prove "that age was the 'but-for' cause of the challenged employer decision." *Id.*

A.	Prima Facie Case

There appears to be no dispute that Porter was qualified for the position, was within the protected class at the time of the employment action, and was replaced by a teacher under the age of 30. Porter Aff. [29-1]. But the parties dispute the first element of the prima facie case—specifically, whether RCSD forced Porter to resign, or if she did so voluntarily.

Porter claims in her Complaint that she was constructively discharged from her employment. Compl. [1] ¶ 7. "Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). "The general rule is that if the

employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990). This is "an objective, 'reasonable employee' test: whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Haley*, 391 F.3d at 650 (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 n.19 (5th Cir. 1994)).

To answer that question, the Court considers whether certain aggravating factors are present, including: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . ." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alteration in original).

Porter has not demonstrated that she was constructively discharged by RCSD. Porter's *sole* argument on the constructive-discharge issue is that "she only offered to retire . . . if Defendant required it, but expressed that she did not want to retire." Pl.'s Resp. [30] at 4 (citing Message [26-8]). Assuming the Facebook message could be read in this light, the argument frames the wrong question. The question is whether Porter has offered record evidence showing a reasonable employee would have felt compelled to resign. *Haley*, 391 F.3d at 650. And significantly, "[p]art of an employee's obligation to be *reasonable* is an obligation not to assume

the worst, and not to jump to conclusions too fast." *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987).

Here, Porter offers no evidence showing RCSD actually required her resignation before she sent the Facebook message or the formal resignation letter.[2]  She does offer an affidavit stating that she was "forced to resign," but she provides no elaboration.  Porter Aff. [29-1].  This conclusory statement is not a sufficient summary-judgment response and otherwise conflicts with Porter's own deposition testimony.  When questioned regarding the termination of her employment, Porter suggested that she chose to resign when faced with an investigation by school authorities.  One week after showing the film, Porter recalled meeting with Assistant Principals Yates and Bullock to discuss the parent complaint and remembered being sent home pending an investigation.  Porter Dep. [26-2] at 17–18.  She testified that Principal Sutton told her the investigation would likely be complete by lunch the following day.  *Id.* at 18.  Rather than wait for the results, Porter sent the Facebook message to Sutton offering to "retire."  Message [26-8].  The following day, she signed a letter of resignation citing "husband's heath; retirement" and filed a pre-application for retirement benefits.  Letter [26-5]; Porter Dep. [26-2] at 20–21.  The uncontroverted evidence therefore shows Porter herself brought up resignation within hours of being sent home on paid administrative leave and ultimately chose retirement the following day before Defendant acted.  No reasonable employee would have felt compelled to retire under those circumstances.  *See Dornhecker*, 828 F.2d at 310.

---

[2]She likewise offers no argument or evidence showing that any of the normal aggravating factors were present.

Accordingly, Porter has not met her burden to show that she was discharged from her position, and RCSD's motion for summary judgment on this ground is due to be granted. Moreover, as explained below, even if Porter could make out a prima facie case of discrimination, summary judgment based on her inability to prove pretext would still be appropriate.

B.      Legitimate Non-Discriminatory Reason

Assuming Porter could make out a prima facie case of age discrimination, the burden shifts to RCSD to come forward with a legitimate, non-discriminatory reason for the discharge. The defendant's reason for the adverse employment action need not be persuasive or credible. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Instead, the defendant's burden is to produce "evidence, which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Hicks*, 509 U.S. at 509). RCSD has met its burden, submitting that Porter violated its Code of Ethics by showing an R-rated film containing profanity and racial slurs to her students.

C.      Pretext

Porter attempts to show pretext by arguing that her actions were comparable to Amy McAllister, a 36 year-old teacher, who was not discharged after showing a clip from the film "Magic Mike." Pl.'s Resp. [30] at 7. To establish disparate treatment, a plaintiff must show that the employer "gave preferential treatment to [another] employee under nearly identical circumstances; that is, that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in . . . by [other] employee[s]." *Okoye v. Univ. of Tex. Hou. Health Sci.*

*Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (alterations in original) (internal quotation marks omitted). Stated differently, "the fact that other employees engaged in similar misconduct and were not fired is not evidence of disparate treatment if some 'difference between the plaintiff's conduct and that of those alleged to be similarly situated account for the difference in treatment received from the employer.'" *Ng-A-Mann v. Sears, Roebuck & Co.*, No. 15-20083, 2015 WL 7348968, at *3 (5th Cir. Nov. 19, 2015) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

Here, Porter has not shown that McAllister is a proper comparator. McAllister showed a 15-minute clip of a dance sequence from the R-rated movie "Magic Mike" to the Florence High School dance team. Hynes Aff. [26-12] at 3. The clip did not contain profanity, and no parents complained. *Id.* McAllister was required to call the parents of the dance team members to apologize. *Id.* Florence High School Principal Tony Martin considered discharging McAllister, but decided to suspend her for three-days after several parents contacted him, urging him to retain McAllister. *Id.*

Porter points out that "Magic Mike," a film about male strippers, "has pervasive sexual content, graphic nudity, profanity, and drug use." Pl.'s Resp. [30] at 8. But Plaintiff cannot attest to what offensive content—if any—was contained in the 15-minute clip McAllister showed to the dance team. Instead, Porter argues in a footnote that "[i]f this case proceeds to trial Plaintiff will request that Mrs. McAllister testify as to which 15 minute segment of the Magic Mike movie was shown so a reasonable jury can determine how allegedly that segment was not as bad as the movie Mrs. Porter showed to her class." *Id.* at 8 n.3. As it stands, RCSD has presented uncontroverted evidence that the clip "depicted a dance scene and *did not contain*

*profanity*." Hynes Aff. [26-12] at 3 (emphasis added). In contrast, Porter admitted in her deposition that "Dolan's Cadillac"—which she showed in full to two tenth-grade English classes—contained profanity and racial slurs and depicted violence and sex trafficking. Porter Dep. [26-2] at 11–12.

In short, Porter offers no evidence to support her arguments of disparate treatment or to otherwise suggest that RCSD's proffered reason was pretext. Summary judgment is therefore appropriate.

IV.     Conclusion

The Court has considered all of the arguments raised by the parties; those not addressed in this Order would not have changed the outcome. Based on the foregoing, the Court finds that Defendant's Motion for Summary Judgment [26] should be granted.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 21st day of January, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE